**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN G. FINNIE, SR.,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVL ACTION NO. 22-CV-3544** |
| | : | |
| **SHAYNE GOODMAN RN, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**MARSTON, J.** **November 15, 2022**

Plaintiff Kevin G. Finnie, Sr., a prisoner incarcerated at Lancaster County Prison ("LCP"), brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, based on the medical care he received at LCP. Currently before the Court are Finnie's Complaint (Doc. No. 5), his Motion for Leave to Proceed *In Forma Pauperis* (Doc. No. 1), his Prisoner Trust Fund Account Statement (Doc. No. 2), and a Motion to Appoint Counsel (Doc. No. 6). For the following reasons, the Court will grant Finnie leave to proceed *in forma pauperis*, dismiss his Complaint without prejudice to amendment pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and deny his Motion to Appoint Counsel without prejudice.

## I. FACTUAL ALLEGATIONS[1]

Finnie names as Defendants the following Prime Care Medical, Inc. ("Prime Care") personnel: Shayne Goodman RN (identified in the Complaint as an "Administrator"), William Cattell (identified as the "Head Doctor"), and Jane Does (identified as "LPNs Wound Care"). (Doc. No. 5 at 2–3.)[2] Each of these Defendants are sued in their official and individual capacities. (*Id.*) Finnie seeks compensatory and punitive damages in excess of $1.5 million

---

1 The factual allegations set forth in this Memorandum are taken from Finnie's Complaint. (Doc No. 5).

2 The Court adopts the pagination supplied to the Complaint by the CM/ECF docketing system.

dollars for mental anguish and pain and suffering, alleging deliberate indifference to his medical needs in violation of the Eighth Amendment. (*Id.* at 3, 6.)

Finnie asserts that he is a "type 2 diabetic" who developed an ulcer on the second toe of his left foot prior to being incarcerated at LCP. (*Id.* at 4–6.) Finnie avers that about a week prior to his incarceration, he treated with his primary care physician and podiatrist who advised him that his bloodwork had come back "negative for infection." (*Id.*) Finnie notes that his physician took pictures of his toe. (*Id.* at 5.)

According to his Complaint, Finnie was incarcerated at LCP on or about May 27, 2021.[3] (*Id.* at 6.) Finnie avers that the nurse who did his intake at LCP "was aware of [his] ulcer" and was told by Finnie that the "directions for care of the ulcer" required that the ulcer be cleaned daily with bandages changed. (*Id.* at 5–6.) Finnie asserts that he also told the "nursing staff" he was a type 2 diabetic and did not have an infection prior to his incarceration at LCP. (*Id.* at 5.)

Finnie alleges that his ulcer "was cleaned and changed" only five times during the fifteen-day period from May 27, 2021 through June 10, 2021. (*Id.* at 5.) He asserts that he was sent to the hospital on June 10, 2021 and was told that his toe had to be amputated. (*Id.*) Finnie avers that his infection was so bad he "had to be put on [an] antibiotic" until June 20, 2021, after which his toe was amputated. (*Id.* at 5.)

---

[3] A review of publicly available records indicates that Finnie was arrested by Lancaster police officers on May 8, 2021 on a charge of simple assault. *See Commonwealth v. Finnie*, CP-36-CR-0002601-2021 (C.P. Lancaster). Over a year later, he pled guilty to the charge on May 19, 2022 and sentenced to a minimum of 6 months imprisonment up to a maximum of 23 months imprisonment. *Id.* At the time of the incident he describes, Finnie was a pretrial detainee at LCP.

## II. STANDARD OF REVIEW

The Court will grant Finnie leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, the Complaint fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Finnie is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

Finnie seeks money damages for constitutional claims. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws

[4] However, as Finnie is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

**A. Claims Against Prime Care Medical, Inc.**

Although unclear, it appears Finnie may have intended to bring claims against Prime Care itself in addition to the named employees of Prime Care. The Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (*per curiam*) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, in order to hold a private health care company like Prime Care liable for a constitutional violation under § 1983, Finnie must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583–84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (cleaned up)). "To satisfy the pleading standard, [the plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). Finnie has not identified any policy or custom of Prime Care that caused him to be deprived of proper care or caused any other constitutional deprivation. Accordingly, any claim against Prime Care, to the extent Finnie intended to assert such a claim, is not plausible.

**B. Official Capacity Claims**

Finnie identifies Defendants Goodman, Cattell, and “Jane Does” as employees of Prime Care. (Doc. No. 5 at 2–3.) To the extent that Finnie asserts claims against employees of Prime Care in their “official capacities,” such claims are not cognizable because Prime Care is a private entity. *Owens v. Connections Cmty. Support Programs, Inc.*, 840 F. Supp. 2d 791, 796 (D. Del. 2012) (“Generally, a suit against a [ ] public officer in his or her official capacity is used to compel that officer to take some official action [and that] concept . . . is inapplicable to suits against private parties where the entity is also susceptible to suit.”). Even if official capacity suits against individuals who work for private companies are cognizable, the suit would, in effect, be one against the company for whom that individual works. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (noting that official capacity suits “generally represent only another way of pleading an action against an entity of which an officer is an agent” (cleaned up)). As previously stated, Prime Care cannot be liable under a theory of respondeat superior or vicarious liability. *Sims*, 635 F. App’x at 20. As Finnie has not alleged that any policy or custom of Prime Care caused the constitutional violations he claims, his official capacity claims fail. *Natale*, 318 F.3d at 583–84.

**C. Deliberate Indifference Claims**

The Court understands Finnie’s claims to be alleging that the Defendants were deliberately indifferent to his serious medical needs, in that he has been denied proper medical care to address a diabetic ulcer on his toe that became infected while he was incarcerated at LCP, resulting in a toe amputation. (Doc. No. 5 at 5–6.) To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825,

835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference "can be shown by 'a prison official intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" *Wilks v. City of Philadelphia*, Civil Action No. 18-4087, 2019 WL 4261159, at *5 (E.D. Pa. Sept. 6, 2019) (quoting *Casilla v. N.J. State Prison*, 381 F. App'x 234, 236 (3d Cir. 2010)). Furthermore, "[a] medical need is 'serious,' . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (cleaned up). "[W]here denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id.; see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (noting that for a serious medical need to exists, "the detainee's condition must be such that failure to treat can be expected to lead to substantial and unnecessary suffering"). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be

liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Finnie does not include any specific factual details about the Defendants' personal involvement in his medical care. Although Finnie asserts that he advised the "nurse" and "nursing staff" during his intake to LCP that he was a type 2 diabetic with an ulcer on the toe of his left foot (Doc. No. 5 at 5–6), there are no further allegations as to who was involved in his medical care during the fifteen-day period from May 27, 2021 through June 10, 2021 when his ulcer "was cleaned and changed" only five times. (*See id.*) It is also unclear to the Court whether the intake nurse is one of the Jane Doe defendants because Finnie asserts that the "Jane Does" are "LPNs wound care" as opposed to intake nurses. (*Id.* at 3.) Moreover, although the Complaint identifies Defendants Goodman and Cattell in the caption and list of defendants (*see id.* at 1–2), Finnie presents no allegations in his Complaint regarding either Defendants' involvement in the alleged constitutional violation. *See Tolentino v. Smucker*, No. 20-3209, 2021 WL 1259418, at *2 (3d Cir. Apr. 6, 2021) (*per curiam*) (affirming dismissal of deliberate indifference claim against hospital administrator because plaintiff "alleged no factual allegations against him").[5]

---

[5] It is possible that Finnie named Goodman and Cattell as Defendants in this case based on their supervisory positions at Prime Care. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quotation

Finnie has failed to set forth sufficient facts to support a plausible deliberate indifference claim against any of the named Defendants. The Complaint does not present any factual allegations demonstrating the personal involvement of any of the Defendants in the alleged constitutional violation. There simply are not enough facts in the Complaint to support a plausible inference that any of the Defendants acted intentionally to refuse to provide medical treatment, delayed treatment, or personally prevented Finnie from receiving treatment. Thus, Finnie has not stated a plausible deliberate indifference for the failure to provide medical treatment.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Finnie leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Cognizant of Finnie's *pro se* status, the Court will grant him an opportunity to "flesh out [his] allegations by . . . explaining in the amended complaint the 'who, what, where, when and why' of [his] claim." *See Davis v. Internal Revenue Serv.*, No. 21-4728, 2022 WL 407639, at *3 (E.D. Pa. Feb. 9, 2022) (citation omitted)). Any amended complaint should clearly describe the factual basis for Finnie's claims against the relevant defendant or defendants and how each defendant was involved in the alleged denial of his constitutional rights. Finnie's Motion to Appoint

---

omitted). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* (cleaned up).

By extension, supervisors are not liable solely by virtue of the fact that their subordinates committed constitutional violations absent some measure of conduct traceable to the supervisors themselves. Nor are generalized allegations that a defendant is "in charge of" or "responsible for" an office or facility sufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

Counsel is denied without prejudice because it is premature. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).

An appropriate Order follows.